## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 30 2015, 6:48 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jane H. Conley
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Devynn Dixon-McNairy, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | June 30, 2015 <br><br> Court of Appeals Case No. 49A02-1501-CR-21 <br><br> Appeal from the Marion Superior Court <br> The Honorable William J. Nelson, Judge <br> Trial Court Cause No. 49F18-1306-FD-39073 |

**Bradford, Judge.**

# Case Summary

[1]     On May 15, 2013, Appellant-Defendant Devynn Dixon-McNairy attempted to donate plasma at a plasma-donation center in Indianapolis.  While at the

plasma-donation center, Dixon-McNairy was briefly left unattended in one of the employee's offices. Dixon-McNairy is the only individual that was left unattended in the employee's office on the date in question. Earlier that morning, the employee had placed her car keys in a desk drawer in the office. After the plasma-donation center closed for the day, the employee noticed her car keys were missing from the desk drawer. She went to the employee parking lot only to realize that her vehicle was also missing.

[2] Dixon-McNairy was subsequently charged with and found guilty of Class D felony theft and Class D felony auto theft. On appeal, Dixon-McNairy challenges the sufficiency of the evidence to sustain her convictions. We affirm.

# Facts and Procedural History

[3] At all times relevant to this appeal, Elizabeth Conley was a full-time registered nurse for Telecris Plasma Resources which operates a plasma-donation center in Indianapolis. The plasma-donation center is a research facility which draws plasma from voluntary donors, subjects the plasma to testing, and "then creates medications for people that cannot create their own immunity." Tr. pp. 10-11. The plasma-donation center utilizes a screening process for potential donors. This screening process includes making copies of the potential donor's picture ID and social security card; checking the potential donor's vitals; and asking the potential donor's a series of health related questions relating, at least in part, to the potential donor's sexual, travel, and medical history.

[4]     On May 15, 2013, Conley worked a twelve-hour shift at the plasma-donation center. Conley arrived at the plasma-donation center at approximately 5:30 a.m. before the start of her shift, which began 6:00 a.m. Upon arriving at the plasma-donation center, Conley parked her 2003 Buick Century in the employee parking area located on the back side of the building. Conley then placed her car keys in the top-right desk drawer in her office. Conley's office was secured by an automated key code.

[5]     During the course of her duties, Conley would bring potential donors back to her office to conduct the above-described screening process. On the date in question, Conley brought two potential donors into her office. One of these potential donors was Dixon-McNairy. The other was an unidentified male. While Conley was completing the screening process, Dixon-McNairy initially indicated that she did not suffer from any allergies, but later indicated that she suffered from seasonal allergies. As a result, Conley had to update the donor identification card to reflect the allergy. Dixon-McNairy was briefly left in Conley's office unattended when Conley stepped out of the office to go to the printer to retrieve the updated donor identification card. The unidentified male was not left unattended in Conley's office at any point.

[6]     Ultimately, Conley determined that Dixon-McNairy did not meet the requirements for being a donor. Upon being informed of Conley's decision, Dixon-McNairy responded "okay" and left. Tr. p. 18. Once outside of the plasma-donation center, Dixon-McNairy started to smoke a cigarette. Dixon-McNairy went around to the employee parking area and sat on a picnic table to

smoke her cigarette after the security officer on duty told her that she could not smoke in front of the plasma-donation center.

[7] At approximately 7:00 p.m. that evening, Conley noticed when she went to leave the facility that her car keys and her 2003 Buick Century were missing. Conley, who had not given anyone permission to take her car keys or her vehicle, reported the vehicle missing to the police. Conley's vehicle was subsequently recovered and taken to the police impound lot. On May 28, 2013, Conley went to the police impound lot and identified her vehicle. Although there was some damage to the vehicle, there was no damage to the vehicle's door lock or ignition. Conley also recovered her car keys on this date.

[8] On June 14, 2013, Appellee-Plaintiff the State of Indiana (the "State") charged Dixon-McNairy with Class D felony theft, alleging that Dixon-McNairy knowingly exerted unauthorized control over Conley's car keys. On this same date, the State also charged Dixon-McNairy with Class D felony auto theft, alleging that Dixon-McNairy knowingly exerted unauthorized control over Conley's 2003 Buick Century. Dixon-McNairy subsequently waived her right to trial by jury. Following a bench trial, the trial court found Dixon-McNairy guilty as charged.

[9] On December 15, 2014, the trial court sentenced Dixon-McNairy to an aggregate 545-day sentence. In sentencing Dixon-McNairy, the trial court gave Dixon-McNairy credit for time served and suspended the remainder of the sentence to probation. This appeal follows.

# Discussion and Decision

Dixon-McNairy contends that the evidence is insufficient to sustain her convictions for Class D felony theft and Class D felony auto theft.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict could be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

In charging Dixon-McNairy with Class D felony theft, the State alleged:

> On or about May 15, 2013, in Marion County, State of Indiana, [Dixon-McNairy] did knowingly exert unauthorized control over the property, to wit: car keys, of another person, to wit: Elizabeth Conley, with the intent to deprive the person of any part of its value or use.

Appellant's App. p. 18. Likewise, in charging Dixon-McNairy with Class D felony auto theft, the State alleged:

> On or about May 15, 2013, in Marion County, State of Indiana, [Dixon-McNairy] did knowingly exert unauthorized control over the property, to wit: [a] 2003 Buick Century, of another person, to wit: Elizabeth Conley, with the intent to deprive the person of any part of the vehicle's value or use.

Appellant's App. p. 19.

[12] With respect to the theft charge, the version of Indiana Code section 35-43-4-2 that was in effect on the date in question provides that "(a) A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony." With respect to the auto theft charge, the version of Indiana Code section 35-43-4-2.5 that was in effect on the date in question provides that "(b) A person who knowingly or intentionally exerts unauthorized control over the motor vehicle of another person, with intent to deprive the owner of … the vehicle's value or use … commits auto theft, a Class D felony." Thus, in order to prove that Dixon-McNairy committed Class D felony theft and Class D felony auto theft, the State had to prove that: on or about May 15, 2013, Dixon-McNairy knowingly exerted unauthorized control over car keys and a vehicle, both of which belonged to Conley.

[13] At trial, Conley testified that she left Dixon-McNairy unattended in her office for approximately twelve seconds. Conley further testified that although two other employees of the plasma-donation center were working on the date in

question and knew the code for her office door, she was the only person to use her office on the date in question.

[14] The parties stipulated to the authenticity of State's Exhibits 1 and 2, which were admitted into evidence. State's Exhibits 1 and 2 were security videos depicting the area including the plasma-donation center's employee parking lot. When State's Exhibit 1 was played for the court, Conley identified her vehicle in the employee parking lot. State's Exhibit 1 also showed a woman wearing a blue shirt sitting on a picnic table near the employee parking lot. The woman remained on the picnic table for approximately four minutes before walking around the vehicles that were parked in the employee parking lot. Approximately twenty minutes later, the woman returned to the picnic table in the employee parking lot. When the woman returned, she was wearing another shirt over the blue shirt that she was previously wearing. The woman's pants and shoes, however, appeared to be the same as she was wearing earlier. At some point, the woman walked toward the employee area for a second time. State's Exhibit 1 showed that Conley's vehicle left the parking lot about thirty seconds after the woman walked toward the employee parking area for the second time. Dixon-McNairy admitted during trial that she was the woman in the blue shirt sitting on the picnic table smoking. She denied, however, that she took Conley's car keys or vehicle.

[15] After taking the matter under advisement for the purpose of reviewing the State's Exhibits 1 and 2 on a larger screen, the trial court stated the following:

Okay. Well, let me say this, I'm glad I took the opportunity to review the video, Ms. Dixon. 'Cause what I inferred during the trial while watching the little videos it was a heck of a lot clearer on the big video. And unless there was extreme coincidence or unless you have an identical twin out there, you are on that video. And the Court is allowed to make reasonable inferences from the evidence that was presented, and in so doing and after considering the evidence I do find you guilty of Counts 1 and 2. Count 1 being theft of the car keys and Count 2 being theft of the auto belonging to Ms. Conley.

Tr. p. 53.

[16] In challenging the sufficiency of the evidence to sustain her convictions, Dixon-McNairy argues that the State lacked any direct evidence linking her to the theft of Conley's car keys and vehicle and that the circumstantial evidence that was presented during trial merely demonstrates that she was present at the plasma-donation center on the day of the theft. Dixon-McNairy correctly states that mere presence at the scene of the crime is insufficient to sustain a conviction for participation in said crime. *See Janigon v. State*, 429 N.E.2d 959, 960 (Ind. 1982). "However, presence at the scene in connection with other circumstances tending to show participation may be sufficient to sustain a conviction." *Pratt v. State*, 744 N.E.2d 434, 436 (Ind. 2001). The Indiana Supreme Court has also held that a conviction may be based entirely on circumstantial evidence. *Franklin v. State*, 715 N.E.2d 1237, 1241 (Ind. 1999). "Circumstantial evidence will be deemed sufficient if inferences may reasonably be drawn that enable the trier of fact to find the defendant guilty beyond a reasonable doubt." *Id.* (citation omitted).

[17]   Upon review, we conclude that the circumstantial evidence presented by the State is sufficient to allow the trial court to reasonably infer Dixon-McNairy's guilt. Accordingly, we further conclude that the evidence is sufficient to sustain Dixon-McNairy's convictions for Class D felony theft and Class D felony auto theft. Dixon-McNairy's claim to the contrary is effectively an invitation to reweigh the evidence, which we will not do. *See Stewart*, 768 N.E.2d at 435.

[18]   The judgment of the trial court is affirmed.

Vaidik, C.J., and Kirsch, J., concur.